IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| CAROLYN HALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:25-CV-00095-H-BU |
| SHANE DEAL, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff CAROLYN HALL brings this action against District Attorney (DA) Shane Deal, Justice of the Peace (J.P.) Stephen Odom, J.P. Burlie Taylor, J.P. Paige Savell, District Judge James Eidson, County Judge Nicki Harle, Constable Ed Duncan, and Deputy FNU Campbell (collectively, "the Defendants"),[1] alleging that they violated her constitutional rights. Hall's claims are subject to judicial screening under 28 U.S.C. §§ 1915 because Hall has been granted leave to proceed *in forma pauperis*, Dkt. No. 6. For the reasons below, the Court should DISMISS Hall's claims as time barred, barred by judicial immunity, and barred by prosecutorial immunity.

## I.  JURISDICTION

Hall brings her claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 16 at 1. Venue is proper in the

---

[1] Judge Edison is identified as Judge Eidson in Hall's pleadings. *See* Dkt. Nos. 1 at 5; 16 at 1. **The clerk is directed to conform the docket to reflect this change.**

1

Northern District of Texas, Abilene Division, because Hall's claims arise from events that occurred in Callahan County, Texas. Dkt. No. 16; 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix referred Hall's case to the undersigned for preliminary screening under Special Order 3. Dkt. No. 2; 28 U.S.C. § 636(c)(1). Hall has not consented to the undersigned exercising the full jurisdiction of this Court.

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

### A.  Hopkins' Death + Subsequent Searches

Hall's claims originate from the death of her common-law spouse, James Monroe Hopkins, on May 18, 2021. Dkt. No. 16 at 2. At the time, Hall and Hopkins lived in a single-family home at 3709 FM 18, Baird, Texas, in Callahan County (the Property). Dkt. No. 10 at 1. The Property also included several outdoor buildings, a shop, three sheds, and a barn. *Id.* at 2. The Property belonged to Hopkins, and Hall had lived there for around twelve years prior to Hopkins' death. *Id.* at 2. Hall and Hopkins also had shared bills and insurance, as well as a joint vehicle loan and bank account. *Id.* at 7.

On the morning of May 18, 2021, Hall discovered Hopkins dead in the home and

called 911. Dkt. No. 10 at 3. Emergency Medical Services responded to her call, along with J.P. Odom and officers from the Sheriff's Department, including Deputy Campbell. *Id.* Campbell questioned Hall about "alleged 'stolen guns' based on statements from others" and, despite lacking a warrant, entered the home to investigate Hopkins' death. *Id.*

Following Hopkins' death, Hall alleges that her rights to possess the Property were repeatedly violated. On the Saturday following Hopkins' death, May 22, 2021, J.P. Odom ordered Hall and others off of the Property without a court order or eviction judgment.[2] Dkt. No. 10 at 11. Two days later on May 24, the Callahan County Sheriff and an unnamed deputy arrived at the Property at 6:00 a.m. with guns drawn, ordering Hall and two friends to the ground at gunpoint. *Id.* at 1–2. They then conducted a warrantless search of the house. *Id.* Another warrantless search was performed at 10:30 a.m. the same day; this time, the Sheriff arrived with several deputies, the Abilene Task Force, and a federal agent. *Id.* at 2. The officers arrived with guns drawn and performed a search of the entire Property, including the home, buildings, shop, sheds, and barn. *Id.* at 2–3. Hall consented to the search because she was intimidated by the officers' guns and believed they had a warrant. *Id.* at 3.

During the second search on May 24, the officers seized personal belongings from the Property—because Hall was never provided a search warrant or inventory of items seized, she doesn't know all the items that were taken. Dkt. No. 10 at 3. Several firearms were seized during the search and later given to Brad Johnson, who has since failed to

---

[2] Prior pleadings indicate that Hopkins' funeral was being held that day, and the order to vacate followed the funeral. Dkt. No. 1 at 4.

return them.[3] *Id.* at 9. When Hall went to the Sheriff's office to retrieve one of the firearms, Deputy Campbell admitted that they did not have a warrant to seize the guns, claiming that there did not "have to be a search warrant if there is stolen stuff in plain sight." *Id.* at 3.

### B. Eviction and Probate

During the administration of Hopkins' estate, Hall came into conflict with Hopkins' daughter, Heidi Heslep, as well as several county officials. Dkt. No. 10 at 10. Hall alleges that probate proceedings began sometime in May 2021 following Hopkins' death, but that she did not receive notices for these hearings and was excluded from them. *Id.* As part of these proceedings, Judge Eidson allegedly dismissed Hopkins' will as invalid. *Id.*

Shortly afterwards, Heidi began eviction proceedings against Hall. On November 22, 2021, Constable Duncan served an eviction notice on Hall outside of his precinct. Dkt. No. 10 at 14. An eviction hearing was then held on December 8, 2021, before J.P. Burlie Taylor, despite the Property being outside his precinct. *Id.* at 6, 14. Ownership of the Property was also subject to ongoing litigation in the 42nd District Court before Judge Eidson, but J.P. Taylor nonetheless allowed the eviction hearing to proceed. *Id.* at 6, 15. J.P. Taylor then entered an eviction order, failing to acknowledge Hall's claim to the Property as common-law spouse. *Id.* When Hall attempted to appeal the eviction order to J.P. Odom, who was aware of her common-law spouse status, he denied the appeal.[4] *Id.* at 6.

On December 20, 2021, Hall was evicted from the Property pursuant to J.P. Taylor's eviction order and a writ of possession. Dkt. No. 10 at 5–6. Constable Duncan was present

---

[3] Hall does not identify Johnson other than to say he is one of several "nonparties." Dkt. No. 12 at 2–3, 6.
[4] Prior filings indicate that the appeal was rejected on December 13, 2021. Dkt. No. 1 at 4.

for the execution of the writ of possession. *Id.* Hall watched as her personal belongings were "destroyed and bulldozed into a pile" on the Property. *Id.* at 5. Hall was also issued a trespass warning based on a trespass action Heidi had initiated. *Id.* at 5, 9–10. She was told that if she stayed on the Property past 2:00 p.m., she would be taken to jail. *Id.* at 18.

It was not until May 2022, a year after probate proceedings allegedly began, that Hall received her first and only notice of the ongoing proceedings. Dkt. No. 10 at 10, 16. Around this time, Judge Eidson removed Heidi Heslep as administrator of Hopkins' estate.[5] Dkt. No. 10 at 6, 11. On the same day, an officer pulled Hall over for an expired paper tag; rather than charge the usual $120 fine, the officer claimed there was no current inspection and charged Hall with a "fraudulent tag." *Id.* at 11. As best the undersigned can tell from Hall's various pleadings, she was also arrested for trespassing, and the vehicle—which belonged to a friend—was impounded because Hall refused to consent to a search. *Id.* Hall was unable to bond out of jail, and thus had to pay $450 to recover the vehicle. *Id.* J.P. Odom intentionally delayed seeing Hall about the case, causing "additional costs and hardship." *Id.* In all, the incident cost Hall $1,500 in fines and fees rather than the expected $120. *Id.*

The final probate court hearing was held in Judge Eidson's chambers on August 18, 2022. Dkt. No. 10 at 16. During the hearing, attempts were made to slander Hall and discredit her character to block her rights as a common-law spouse. *Id.* These efforts were successful, as Hopkins' will was disqualified and Judge Eidson appointed Heidi as the

---

[5] Prior pleadings indicate this occurred on May 12, 2022. Dkt. No. 12 at 4.

administrator of the estate. *Id.* Hall was represented by court-appointed attorney Mr. Lady-man, but he did nothing to meaningfully represent Hall; at the end of the hearing, he told Hall that "that was it" and that she could not appeal the decision. *Id.* at 16–17.[6]

In January 2023, Plaintiff contacted Ryan Heslep—Heidi Heslep's husband—to request the return of her belongings. Dkt. No. 10 at 6. She was then informed that her belongings were gone; rather than prepare an inventory and return her property after the probate proceedings concluded, her belongings were buried in a hole in the back of the Property. *Id.* at 5–6. The destroyed property included clothes, furniture, household items, and memorabilia of her children. *Id.* at 5. She was also deprived of the trailer, barn, shed, and storage building that she either purchased or improved at her expense. *Id.* Hall also alleges that Ryan gave away some of her property, including a Honda Goldwing motorcycle worth $3,500. *Id.* at 7. Hall was not compensated for any of her lost property. *Id.*

Once she learned about the destruction of her property, Hall contacted several attorneys to put together a conversion claim, but was unable to find counsel who would help. Dkt. No. 10 at 18. She also lacked the funds and knowledge to pursue a conversion claim on her own. *Id.* Instead, she spent time reading until she felt prepared to file a small claims action to recover some of what she had lost. *Id.* She finally filed a small claims action against Heidi Heslep around November 2024. *Id.* at 10. Shortly afterwards, DA Deal filed a forgery action against Hall based on Hopkins' disqualified will, even though the will had

---

[6] The probate proceedings also involved a trespassing charge she had been arrested for. Dkt. No. 10 at 16. Prior filings explain that the charge was dropped around August 2022 when she entered an agreement with DA Deal to stay away from the Property for 90 days. Dkt. Nos. 1 at 5; 10 at 13.

been dismissed 3.5 years before.[7] *Id.* Hall alleges that this forgery charge was filed in retaliation to her small claims suit against Heidi. *Id.* at 9–10.

Hall's small claims action was brought before J.P Savell. Dkt. No. 10 at 6. Savell dismissed the action, explaining that the statute of limitations for the claim had expired.[8] *Id.* When Hall appealed to County Judge Nikki Harle, her appeal was dismissed rather than transferring the appeal to the proper jurisdiction. *Id.* at 6, 9.

### III.  THE PARTIES

Hall brings her claims against the following defendants: (1) DA Deal, (2) J.P. Odom, (3) J.P. Taylor, (4) J.P. Savell, (5) District Judge Eidson, (6) County Judge Harle, (7) Constable Duncan, and (8) Deputy Campbell. Hall sues each of these defendants in their individual capacities. Dkt. No. 16 at 1. Hall also brings official capacity and policy claims against Callahan County. **The Clerk is directed to update the docket to reflect this change.**

Liberally construing Hall's pleadings, she brings the following claims against the defendants: (1) Fourth Amendment claims based on the searches of the Property and seizure of her possessions and firearms; (2) Fourteenth Amendment due process claims based on the seizure of her possessions, wrongful eviction, and exclusion from probate proceedings; (3) Fourteenth Amendment equal protection claims based on the failure to acknowledge her status as a common-law spouse; (4) First Amendment retaliation claims based on adverse state action following her attempts to assert her property and marital

---

[7] The forgery claim was set to go to trial in September 2025. Dkt. No. 10 at 13. The undersigned is unaware of the outcome of the litigation.
[8] According to prior filings, this dismissal occurred on December 19, 2024. Dkt. No. 1 at 5.

rights in court; and (5) conspiracies under § 1983 and § 1985(3) to deprive her of property and retaliate against her.

### IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court.

8

*Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

9

strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V.  ANALYSIS

Several of Hall's claims are asserted against judges and prosecutors. Thus, the undersigned must briefly assess whether judicial or prosecutorial immunity bars any of Hall's claims. The undersigned must also determine whether any of Hall's claims are barred by the statute of limitations. If any claims survive both the defendants' immunity and the statute of limitations, the undersigned will then address whether the remaining claims have been plausibly alleged.

### A.  Judicial and Prosecutorial Immunity

Hall asserts claims against various judicial officials, including Justices of the Peace, County Judges, and District Judges. Judges enjoy absolute immunity for judicial acts, even when accused of acting maliciously or corruptly. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Jones v. King*, 148 F.4th 296, 300 (5th Cir. 2025). There are only two exceptions to this immunity: (1) "nonjudicial" actions outside of the defendant's judicial capacity, and (2) actions made in clear absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12.

Whether an act is judicial depends on the nature of the act and the expectations of

the parties—courts consider whether the act is one normally performed by a judge and whether the parties were dealing with the judge in his or her judicial capacity. *Id.* at 12 (citing *Stump v. Sparkman,* 435 U.S. 349, 362 (1978)). An act does not become nonjudicial merely because it is "improper or erroneous." *Id.* at 12–13 (holding that a judge's order to bring a person into the court was a judicial act, even when he directed officers to use excessive force to do so). And a judge likewise does not act in "clear absence of all jurisdiction" merely because his conduct exceeds his jurisdiction. Instead, judicial immunity is available so long as the court has "some subject-matter jurisdiction." *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985) (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).[9]

Hall has also asserted claims against District Attorney Shane Deal based on his role as a prosecutor. State prosecutors also enjoy absolute immunity for certain acts; "[a] state prosecutor who acts within the scope of his duties in initiating and pursuing a criminal prosecution is absolutely immune from § 1983 claims for violating a defendant's constitutional rights." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)) (internal quotations omitted).

However, a prosecutor is not automatically entitled to immunity; instead, whether prosecutorial immunity applies depends on the function the prosecutor was performing. *Id.* This "functional approach" distinguishes between (1) actions taken "in preparation for the initiation of judicial proceedings or for trial[,]" which comprise the prosecutor's "role as

---

[9] For example, a probate judge given jurisdiction only over wills and estates acts in clear absence of jurisdiction if he tries a criminal case, while a criminal judge merely acts in excess of his jurisdiction if he convicts a defendant of a nonexistent crime. *Stump*, 435 U.S. at 357 n. 7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

an advocate for the State," and (2) the "administrative duties and investigatory functions" that "do not relate to an advocate's preparation for the initiation of a prosecution." *Id.* at 779–80 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Only actions in the former category, such as the decision to bring a prosecution or present evidence before a judge, are protected by prosecutorial immunity.[10]

### 1. J.P. Odom

Hall alleges four acts of misconduct against J.P. Odom: (1) ordering her off the Property on May 22, 2021, without a court order or eviction judgment, (2) conspiring with the Sheriff's Department to effect this removal, (3) denying Hall's appeal from the eviction order entered by J.P. Taylor, and (4) deliberately delaying seeing Hall for her fraudulent inspection tag or trespass charge. Dkt. No. 10 at 6, 11–12.

The undersigned concludes that each of these acts are protected by judicial immunity. The undersigned concludes that denial of an appeal and determining when to hold hearings are both judicial acts that are within J.P. Odom's jurisdiction. And, while it may be "improper or erroneous" to order that property be vacated without an eviction judgment, it appears even Hall concedes the order would be proper with such a judgment; the act is thus judicial. Dkt. No. 10 at 11. That justice courts have subject-matter jurisdiction to preside over eviction actions means J.P. Odom also did not act in clear absence of jurisdiction. *Dormady v. Dinero Land & Cattle Co., L.C.*, 61 S.W.3d 555, 557 (Tex. App. 2001).

J.P. Odom is also immune to the conspiracy claim raised against him. The Fifth

---

[10] *See, e.g. Hartman v. Moore*, 547 U.S. 250, 262 (2006) (noting that prosecutor is "absolutely immune from liability for the decision to prosecute"); *Burns v. Reed*, 500 U.S. 478, 490–92 (1991) (discussing prosecutorial immunity for "presenting evidence in support of a motion for a search warrant").

Circuit has held that, "where the alleged harm, though resulting from a bribe or conspiracy, was inflicted by acts to which absolute immunity would apply, the complaint is insufficient to avoid judicial immunity." *Holloway v. Walker*, 765 F.2d 517, 522–23 (5th Cir. 1985). Hall alleges that J.P. Odom conspired with others to remove her from the Property on May 22, but as noted above absolute immunity applies to said removal. Dkt. No. 10 at 11–12. Thus, J.P. Odom cannot be liable for conspiracy based on his judicial act. Hall's conspiracy and non-conspiracy claims against J.P. Odom are each barred by his judicial immunity.

### 2. *J.P. Taylor*

Next, Hall alleges that J.P. Taylor engaged in the following misconduct: (1) presiding over an eviction proceeding outside of his precinct, (2) disregarding Hall's common-law spouse claim to the Property, and (3) conspiring with Heidi Heslep and the Sheriff's department to enforce Heidi's eviction and trespass claims. Dkt. No. 10 at 6, 12, 14.

Each of the three claims against Taylor are barred by judicial immunity. Hall correctly notes that J.P. Taylor lacked jurisdiction over the eviction proceedings because the Property was outside of his precinct.[11] However, this speaks to *personal* jurisdiction over Hall and the Property, not *subject-matter* jurisdiction over eviction proceedings generally. The Texas Property Code makes clear that Justice Courts can hear eviction proceedings. TEX. PROP. CODE § 24.004(a) (authorizing justice courts to hear eviction suits). Because J.P. Taylor had "some subject-matter jurisdiction" over the eviction proceedings, he did not act in clear absence of jurisdiction. *Adams*, 764 F.2d at 298.

---

[11] TEX. PROP. CODE § 24.004(a) ("[A] justice court in the precinct in which the real property is located has jurisdiction in an eviction suit."); § 24.0041 ("An eviction suit must be brought in the justice precinct where the real property is located.").

With the question of jurisdiction resolved, it is trivial to conclude that overseeing an eviction proceeding, issuing the eviction order, and issuing a subsequent writ of possession were each judicial acts. Hall argues that J.P. Taylor either failed to consider or ruled against her valid common-law marital status when performing these acts, Dkt. No. 10 at 15, but his conduct would be judicial even if it was "incorrect or erroneous." *Mireles*, 502 U.S. at 12–13. J.P. Taylor's conduct was judicial and was not done in clear absence of jurisdiction; judicial immunity therefore applies. Because J.P. Taylor is absolutely immune to liability for his eviction order and his ruling on Hall's marital status, he is also immune to liability for an alleged conspiracy to perform said judicial acts. *Holloway*, 765 F.2d at 522–23. Thus, each of Hall's claims against J.P. Taylor are barred by judicial immunity.

### 3. *Remaining Judicial Claims*

The remaining claims Hall seeks to assert are also barred by judicial immunity. Altogether, she asserts the following claims against the remaining judicial defendants: (1) J.P. Savell dismissed her small claims suit based on the statute of limitations; (2) Judge Eidson presided over probate proceedings without notice to Hall; (3) Judge Eidson disregarded Hall's common-law spouse claims to the Property in the probate proceedings; (4) County Judge Harle dismissed the appeal of her small claims case; (5) upon dismissal, County Judge Harle failed to transfer her appeal to the correct jurisdiction; and (6) J.P. Harle and J.P. Savell conspired with DA Shane Deal to retaliate against Hall for asserting her rights. Dkt. No. 10 at 6, 9, 12, 16–17.

Each of the non-conspiracy claims involve the usual judicial functions of the defendants—dismissing cases, granting or denying appeals, and presiding over probate

matters. *Id.* Hall also approached each defendant through a judicial proceeding with the understanding that the defendant acted in his or her capacity as a judge. *Id.* Thus, each of the claims implicates judicial rather than nonjudicial acts. And in each case, Texas Law granted the judge some subject-matter jurisdiction over the respective small claims and probate proceedings.[12] Thus, none of the defendants acted with a clear lack of jurisdiction. Rather than challenge the defendants' jurisdiction, Hall instead argues that the defendants acted improperly;[13] even assuming she is correct, this does not affect whether the conduct was judicial or whether jurisdiction was proper.

With neither exception to judicial immunity established, the claims enumerated above are barred. And because Hall bases her conspiracy claims against J.P. Harle and J.P. Savell solely on conduct shielded by judicial immunity, her conspiracy claims are also barred. *Holloway*, 765 F.2d at 522–23. Thus, each of Hall's claims against the judicial defendants are barred by judicial immunity.

### 4. Prosecutorial Immunity

The undersigned lastly turns to Hall's claims against DA Shane Deal. Hall alleges that Deal brought criminal forgery charges against her in retaliation to her efforts to bring a small claims action against Heidi Heslep. Dkt. No. 10 at 6, 10. Hall also alleges that Deal

---

[12] TEX. GOV. CODE § 27.031(a)(1) (granting justice courts jurisdiction over civil matters where amount in controversy is less than $20,000); TEX. R. CIV. P. 506 (acknowledging county court's appellate jurisdiction over appeals from justice courts); TEX. ESTATES CODE § 32.003(f) (noting that district courts have jurisdiction over contested probate matters).

[13] Hall argues that Judge Eidson acted without jurisdiction because he failed to provide her notice of probate proceedings and did not establish proper ownership. Dkt. No. 10 at 17. Even if this fact renders Judge Eidson's conduct improper, it does not divest his court over subject-matter jurisdiction over probate matters. *Stump*, 435 U.S. at 357 n. 7 (citing *Bradley*, 80 U.S. at 352).

15

conspired with Judge Harle to effect this retaliation. *Id.* at 12.

Hall's retaliation claim is squarely barred by prosecutorial immunity. The sole retaliatory act Hall alleges is that Deal brought forgery charges against her; the Supreme Court explicitly recognized a state prosecutor's immunity to § 1983 claims based on exercise of discretion "both in deciding which suits to bring and in conducting them in court." *Imbler*, 424 U.S. at 424. And both the Supreme Court and Fifth Circuit have recognized that prosecutorial immunity applies to First Amendment retaliation claims based on the decision to bring criminal charges.[14] Thus, Hall's retaliation claim is barred.

Hall's conspiracy claim against DA Deal is also barred by prosecutorial immunity. Just as with conspiracy claims based on protected judicial acts, the Fifth Circuit has held that conspiracy claims based on protected prosecutorial functions are also barred by absolute immunity. *Weeks v. Shipman*, 70 F.3d 1267, 1267 (5th Cir. 1995) ("Even allegations of conspiracy do not pierce [prosecutorial] immunity"). Thus, Hall conspiracy claim against DA Deal is also barred by prosecutorial immunity.

### 5. *Summary*

To summarize, none of Hall's claims against J.P. Odom, J.P. Taylor, J.P. Savell, Judge Eidson, County Judge Harle, and DA Deal survive the absolute immunity bar. Because each of Hall's claims against these defendants are barred by judicial or prosecutorial immunity, they must be dismissed.

---

[14] *Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) ("A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute[.]"); *Shipman v. Sowell*, 766 F. App'x 20, 26 (5th Cir. 2019) ("A final debilitating feature of this [retaliation] claim is that as the prosecutor, [the defendant] is shielded by absolute immunity.").

16

## B.  Statute of Limitations

Hall brings her claims under § 1983, which does not include a statute of limitations. 42 U.S.C. § 1983. Instead, the Supreme Court determined that the general statute of limitations of the forum state for personal injuries governs § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 239 (1989). In Texas, a plaintiff has two years from the time his claims accrue to file personal injury claims, including claims under § 1983. *Balle v. Nueces Cty., Texas,* 952 F.3d 552, 556 (5th Cir. 2017) (citing TEX. CIV. PRAC. & REM. CODE Ann. § 16.003(a)).

Federal courts also apply the forum state's equitable tolling principles. *Wallace v. Kato*, 549 U.S. 384, 394 (2007) Equitable tolling is sparingly applied by Texas courts. *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam). To be entitled to equitable tolling under Texas law, a plaintiff must demonstrate that he "actively pursued his judicial remedies but filed a defective pleading during the statutory period" or "was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. – Dallas 2005).

Unlike tolling, the accrual of a plaintiff's claims is a question of federal law, not state law. *Nottingham v. Richardson*, 499 F.App'x 368, 375 (5th Cir. 2012); *see also Wallace v. Kato*, 549 U.S. 384 (2007) (holding that while the forum state's statute of limitations are used in a § 1983 claim, federal law governs when the cause of action accrues). "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Bd. of Trustees,* 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir.1987)).

A plaintiff is aware of an injury once he gains "possession of two critical facts: (1) an injury has occurred; and (2) the identity of the person who inflicted the injury." *Stewart v. Par. of Jefferson,* 951 F.2d 681, 684 (5th Cir.) *cert. denied,* 506 U.S. 820 (1992). This standard is satisfied through either actual or constructive knowledge; the plaintiff is aware of an injury if he has "facts which, in the exercise of due diligence, would have led to actual knowledge." *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). Likewise, a plaintiff need not realize that a legal cause of action exists, so long as he knows of facts that would lead a reasonable person to either conclude that the defendant's actions produced his injury or, at minimum, seek professional advice leading to the same conclusion. *Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir.1983); *see also Turner v. Johnson*, 177 F.3d 390, 391–92 (5th Cir. 1999) (noting that ignorance of the law and illiteracy are not grounds for equitable tolling (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991))).

The continuing tort doctrine may also delay the accrual of a plaintiff's claim. Under Texas law, a continuing tort is one that continues to inflict additional injury until the tortious conduct ceases. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017); *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (quoting *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied)). "For continuing torts, 'the cause of action is not complete and does not accrue until the tortious acts have ceased.'" *Id.* (quoting *Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex. App.—Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993)). However, a continuing tort does not exist when a singular act causes ongoing injury. *Exxon Mobil Corp.*, 520 S.W.3d at 593.

### 1. *Application*

Here, Hall filed her Original Complaint on June 12, 2025. Dkt. No. 1. Applying Texas' two-year statute of limitations, any claims that accrued prior to June 12, 2023, are barred unless equitable tolling applies. Thus, the claims arising from the following events are potentially barred: (1) the searches and seizures that occurred on May 18 and May 24, 2021; (2) Hall's removal from the Property on May 22, 2021; (3) the eviction proceedings, denial of appeal, and resulting eviction and removal of personal property, which concluded on December 20, 2021; (4) the probate proceedings, which she was first notified of in May 2022 and which concluded on August 18, 2022; and (5) the conversion and burial of her belongings, which she became aware of in January 2023. Dkt. No. 10 at 1–11, 16–17. Also implicated are Hall's conspiracy claims against Constable Duncan, Deputy Campbell, J.P. Odom, J.P. Taylor, Judge Eidson, and Callahan County based on the above events. *Id.* at 11–12.

Based on Hall's pleadings, each of these claims are barred by the statute of limitations.[15] Hall was present for most of the violations enumerated above, and was thus aware of facts allowing her to infer that a violation had occurred. *Id.* While Hall was not present for the earliest probate proceedings or for the conversion of her belongings, her resulting claims nonetheless accrued once she received notice of these events. *Id.* at 7, 16. And in each case, Hall was aware of the defendants responsible for the perceived wrong either when the event occurred or shortly afterwards. The continuing tort doctrine does not alter

---

[15] The undersigned notes that most of these claims are also barred by judicial immunity, as discussed prior. However, the limitations period is relevant to the claims raised against the non-judicial defendants.

this assessment, as the above claims concern singular actions that at most produced ongoing injury.

There are also no facts supporting equitable tolling in this case. Hall states that she pursued civil action following the loss of her belongings, but only to file a small claims action against Heidi Heslep. Dkt. No. 10 at 12, 18. Thus, her efforts do not constitute diligent pursuit of her civil claims against the named defendants. The undersigned also notes that the claim she eventually filed was purportedly dismissed as time-barred under the statute of limitations, suggesting that even these efforts may have been untimely. *Id.* at 6. And while Hall alleges a conspiracy to prevent her from pursuing her rights in the justice courts, *Id.* at 12, she does not allege that she was prevented from filing her claims or tricked into missing deadlines in either state or federal court.[16]

The undersigned also finds that Hall's conspiracy claims are barred, in so far as they are based on the barred claims above. The "actionable injury in a civil conspiracy flows from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Turner v. Upton Cnty., Tex.*, 967 F.2d 181, 185 (5th Cir. 1992). Thus, a conspiracy claim under § 1983 requires "sufficient evidence of an overt act committed during the time period not barred by the statute of limitations." *Id.* Prior events may be relevant as evidence that a conspiracy existed, but cannot be the *basis* for the conspiracy cause of action. *Id.* Because the actions alleged above fall outside the statute of limitations, Hall cannot bring a conspiracy action based on the harm these actions caused.

---

[16] Attorney Ladyman's advice that she could not appeal the probate decision also does not warrant tolling, as he is not a defendant in this case. Dkt. No. 10 at 16–17.

By contrast, claims arising from the following events accrued within two years of Hall's complaint and are thus not barred by the statute of limitations: (1) DA Shane Deal's forgery charges against Hall, which were filed in November 2024; and (2) the dismissal of her small claims suit and appeal by J.P Savell and Judge Harle, which occurred around December 2024. Dkt. No. 10 at 6, 9–10. Hall's conspiracy claims that arise from the above events also fall within the statute of limitations. But these surviving claims are asserted solely against judicial and prosecutorial defendants; as noted prior, these three defendants are protected by absolute immunity. Thus, each of Hall's claims that fall within the statute of limitations are nonetheless barred by judicial and prosecutorial immunity.

### 2. Summary

In summary, the undersigned concludes that each of Hall's claims that were not already barred by judicial or prosecutorial immunity are nonetheless barred by the statute of limitations. Equitable tolling also does not apply to these claims; because the statute of limitations is an absolute bar to these remaining claims, they should be dismissed.

Because either the statute of limitations or absolute immunity bar each of Hall's claims, it is unnecessary to discuss the plausibility of her allegations. The undersigned instead concludes that each of Hall's claims should be dismissed.

### VI. LEAVE TO AMEND

Still, there is the issue of whether the Court must give Hall leave to amend her complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend her complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other

words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the undersigned finds that further leave to amend would be futile. Hall has been allowed to amend her claims twice, and has supplemented her claims through her detailed response to the Court's questionnaire. Dkt. Nos. 1, 10, 12, 15. Each of Hall's claims fail either because they were untimely filed or because they are barred by judicial and prosecutorial immunity. Further factual development would not allow Hall to circumvent these barriers to her claims. Based on the opportunities to supplement already provided, the undersigned concludes that further leave to amend should not be granted.

## VII.  CONCLUSION

For the reasons above, the undersigned RECOMMENDS that the Court DISMISS Hall's claims against all defendants with prejudice as time barred, barred by judicial immunity, and barred by prosecutorial immunity.

## VIII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the

magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Hall's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:25-CV-00095-H.

ORDERED this 23rd day of March 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

23